### The PEOPLE of the State of Colorado, Complainant,

v.

### Deborah Hope FOREMAN, Attorney–Respondent.

### No. 98SA261.

Supreme Court of Colorado, En Banc.

Oct. 19, 1998.

---

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Craig Silverman, David Olivas, Denver, for Attorney–Respondent..

## PER CURIAM.

An inquiry panel of the grievance committee approved the stipulation, agreement, and conditional admission of misconduct entered into between the respondent, Deborah Hope Foreman, and the complainant. *See* C.R.C.P. 241.18. The conditional admission recommended discipline in a range of public censure to a sixty-day suspension from the practice of law for entering into a prohibited business transaction with a client. In approving the conditional admission, the inquiry panel recommended the sixty-day suspension. We accept the conditional admission and the inquiry panel's recommendation, and order that Foreman be suspended for sixty days.

## I.

■ Deborah Hope Foreman was admitted to practice law in Colorado in 1988. The conditional admission states that Charlene King hired Foreman to represent her in a child-support matter in 1992. In 1993, King retained her to enforce a promissory note. Finally, Foreman represented King in a dissolution of marriage proceeding in 1994. Foreman and King became close friends.

In early September 1994, Foreman borrowed $40,000 from King to buy a condominium. King was aware that Foreman was having difficulty obtaining such a loan, and King agreed to borrow $40,000 herself, secured by a first deed of trust on King's house. King then loaned that money to Foreman. In return, Foreman agreed to execute a one-year promissory note secured by a deed of trust on the condominium. Foreman also agreed to pay the closing costs, mortgage payments, and interest, plus an additional one percent monthly interest payment to King for the use of her money.

Foreman asserts that she told King to obtain independent legal advice about the transaction; that King told her that she had gotten another lawyer to review it, and that the other lawyer told her not to complete the process. King, on the other hand, would testify that she believed that Foreman was her lawyer in the transaction. King did not have a lawyer other than Foreman at the closing of the loan.

The conditional admission indicates that the only writings between the parties were a promissory note that did not accurately reflect the terms of the loan, and a deed of trust prepared by King's mortgage loan broker, Roderick McLean. McLean also acted as Foreman's mortgage loan broker. He would testify that Foreman was acting as King's attorney because Foreman told him to deal with her exclusively, and because King said that Foreman was her lawyer. Foreman denies that she was acting as King's lawyer in this specific transaction, or that she ever represented herself as such. It is undisputed that Foreman neither informed King of the terms of the loan agreement in writing as required by Colo. RPC 1.8(a)(1), nor obtained King's consent to the transac

tion in writing as required by Colo. RPC 1.8(a)(3).

In any event, as a result of Foreman's instructions, McLean provided Foreman with all the paperwork, including a proposed deed of trust, a promissory note, and other documents. The promissory note that was executed at the closing provided incorrectly that it was due and payable in thirty-years, or 2024, rather than one year, 1995, as agreed between King and Foreman. Foreman signed the thirty-year note at the closing on October 12, 1994, although she admits that the note should have been payable by a balloon payment at the end of one year, instead of in installments over thirty years. Foreman maintains that she failed to notice the mistake at the closing.

After the closing, it became apparent that there was no deed of trust on Foreman's condominium to secure the loan. Foreman asserts that King waived that security requirement by asking Foreman to obtain life insurance naming King the primary beneficiary as collateral for the loan, but King denies that. Foreman admits, however, that she should have either executed and recorded the deed of trust or informed King in writing of the effects of the change in the terms of the loan.

Over a year later, King sent letters to Foreman asking for the deed of trust to secure the loan. On December 29, 1995, Foreman advised King that she would provide the deed of trust only if the terms of the note were changed to be more favorable to Foreman. Foreman made this statement because she thought that King had already rejected the deed of trust in favor of the life insurance policy.

Foreman did not pay off the loan in one year as was agreed, although she did make monthly payments. King hired another lawyer to file an action against Foreman seeking the full amount of the note plus interest and attorney fees because of Foreman's late monthly payments. The conditional admission states that King thereby effectively ratified the terms of the note as written rather than agreed on, i.e., thirty years instead of one year. Foreman's answer stated that all of her monthly payments were made when due.

Foreman asserted a counterclaim alleging that King had filed an improper lien against her property, constituting a slander on the title to the property. The action between Foreman and King was settled in 1998, and Foreman has paid all debts to King. Foreman has admitted that the foregoing conduct violated Colo. RPC 1.8(a) (entering into a prohibited business transaction with a client).

## II.

 The conditional admission authorized the imposition of discipline in the range of public censure to suspension for sixty days. The inquiry panel recommended the sixty-day suspension, as does the complainant. Foreman believes a public censure is adequate, and she has filed her own eighteen-page "analysis of discipline" to support the contention. Her analysis contains many assertions of fact about King and McLean, the transaction at issue, and her own motives, beliefs, and actions that are not within the conditional admission. As we said in *People v. Dickinson*, 903 P.2d 1132, 1138 (Colo. 1995):

> The joint factual stipulations of the respondent and the assistant disciplinary counsel contained in the verified conditional admission itself are entitled to the most weight in our decision. The unsworn factual assertions of the respondent's lawyer, on the other hand, submitted to the court in "Respondent's Analysis of Stipulation, Agreement and Conditional Admission of Misconduct," *are not competent evidence and are given no weight insofar as they tend to defend or mitigate the respondent's misconduct.*

(Emphasis added.) We confine ourselves, therefore, to the text of the conditional admission itself, and the legal arguments of counsel in their respective analyses of discipline.

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*) provides that, in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer

*knows* of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." ABA *Standards* 4.32 (emphasis added). On the other hand, a public censure is warranted if the lawyer is *"negligent* in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client." *Id.* at 4.33 (emphasis added).

Foreman has received two letters of admonition before, which is an aggravating factor for purposes of our analysis. *See id.* at 9.22(a) (previous discipline is an aggravating factor). In mitigation, according to the complainant, Foreman has made full and free disclosure to the disciplinary authorities, *see id.* at 9.32(e), and expressed remorse for her misconduct, *see id.* at 9.32(*l*). Foreman advances a number of other mitigating factors in her analysis of discipline, but because they are based on alleged facts outside of the stipulations in the conditional admission, we decline to give them any weight. In addition, Foreman asserts that her mental state at the time of the misconduct was one of negligence, but, again, that contention is based on facts outside of the conditional admission.

The Terminology section of the Rules of Professional Conduct states, " 'Knowingly,' 'known,' or 'knows' denotes actual knowledge of the fact in question. *A person's knowledge may be inferred from circumstances.*" (Emphasis added.) A fair reading of the conditional admission is that Foreman's conduct at all times was "knowing" when she entered into the prohibited transaction with her client. Ignorance of the requirements of a Rule of Professional Conduct does not transform knowing conduct into conduct that is merely negligent.

Given this knowing mental state, the presumed sanction is some period of suspension. *See* ABA *Standards* 4.32. Foreman's prior discipline reinforces our conclusion that a period of suspension is warranted. Accordingly, we accept the conditional admission and the inquiry panel's recommendation. At least one member of the Court would reject the stipulation as too lenient.

### III.

It is hereby ordered that Deborah Hope Foreman be suspended from the practice of law for sixty days, effective thirty days after this opinion is issued. Foreman is also ordered to pay the costs of this proceeding in the amount of $655.47 within thirty days of the date of this decision to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 300 South, Denver, Colorado 80202–5435.